**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **MIDCON GATHERING, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CAUSE NO. 4:16-cv-03615** |
| | § | |
| **PRODUCERS CREDIT** | § | |
| **PROTECTION GROUP, INC.,** | § | |
| | § | |
| **Defendant.** | § | |

**DEFENDANT'S MOTION TO DISMISS
<u>OR, ALTERNATIVELY, MOTION TO TRANSFER</u>**

## TABLE OF CONTENTS

I.     SUMMARY ........................................................................................................1

II.    STATEMENT OF THE CASE ...........................................................................1

III.   STANDARD OF REVIEW ................................................................................5

IV.   COMPELLING CIRCUMSTANCES EXIST TO DISREGARD THE FIRST-FILED RULE AND DISMISS THIS ACTION...........................................................7

V.    ALTERNATIVELY, THIS CASE SHOULD BE TRANSFERRED TO THE FEDERAL DISTRICT COURT FOR THE DISTRICT OF ARKANSAS................14

     A.   Private Interest Factors .......................................................................15

     B.   Public Interest Factors .........................................................................16

VI.   CONCLUSION AND PRAYER .......................................................................17

## **TABLE OF AUTHORITIES**

**Cases**

*909 Corp. v. Vill. of Bolingbrook Police Pension Fund*,
  741 F. Supp. 1290 (S.D. Tex. 1990) ......................................................... 7, 8, 10, 11

*Am. Bankers Life Assurance Co. of Fla. v. Overton*,
  128 F. App'x 399 (5th Cir. 2005) ...................................................................... 7

*Amerada Petroleum Corp. v. Marshall*,
  381 F.2d 661 (5th Cir. 1967) ............................................................................ 8

*Associated Mills, Inc. v. Regina Co., Inc.*,
  675 F. Supp. 446, 448 (N.D. Il. 1987). ........................................................... 12

*Atochem N. Am., Inc. v. Fisons PLC*,
  1990 WL 31897 (E.D. Pa. March 20, 1990) .................................................... 12

*Bell v. Bank of Am. Home Loan Servicing, LP*,
  2012 WL 568755 (S.D. Tex. 2012) ................................................................... 5

*Chapa v. Mitchell*,
  No. A-05-CV-769-JN, 2005 WL 2978396 (W.D. Tex. Nov. 4, 2005)........................... 8, 9, 14

*Columbia Pictures Industries, Inc. v. Schneider*,
  435 F. Supp. 742 (S.D.N.Y.1977) ..................................................................... 8

*Ducharme v. Ducharme*,
  316 Ark. 482, 872 S.W.2d 392 (1994)............................................................. 16

*Dynamic Sports Nutrition, LLC v. Hi-Tech Pharm., Inc., CV H-15-2645*,
  2016 WL 1028691 (S.D. Tex. Mar. 15, 2016).................................... 6, 7, 11, 12, 13

*Frank's Tong Serv., Inc. v. Grey Wolf Drilling Co, L.P.*,
  2007 WL 5186798 (S.D. Tex. 2007) .................................................................. 7

*In re Volkswagen of Am., Inc.*,
  545 F.3d 305 (5th Cir. 2008) ............................................................... 14, 15, 16

*Lewis v. National Football League*,
  813 F. Supp. 1 (D. D.C. 1992)......................................................................... 12

*Liberty Mut. Fire Ins. Co. v. Bohms*,
  2011 WL 3268608 (W.D. Mich. July 29, 2011), *aff'd*, 490 Fed.Appx. 721, (6th Cir. 2012) ..... 7

*Mann Mfg., Inc. v. Hortex, Inc.*,
  439 F.2d 403, 407 (5th Cir. 1971) ................................................................... 13

*Merle Norman Cosmetics v. Martin*,
  705 F. Supp. 296 (E.D. La. 1988) ............................................................. 8

*Metro Optics, Inc. v. Contex, Inc.*,
  No. 95-2157, 1996 WL 302697 (N.D. Tex. Mar. 14, 1996) ..................... 13

*Mill Creek Press, Inc. v. The Thomas Kinkade Co., CIVA.3:04-CV-1213-G*,
  2004 WL 2607987 (N.D. Tex. Nov. 16, 2004) ............................... 8, 9, 10

*Mission Ins. Co. v. Puritan Fashions Corp.*,
  706 F.2d 599 (5th Cir. 1983) .................................................................. 6, 8

*New Orleans Pub. Serv., Inc. v. Majoue*,
  802 F.2d 166 (5th Cir. 1986) ................................................................... 12

*Nursing Home Consultants, Inc. v. Quantum Health Services, Inc.*,
  926 F. Supp. 835 (E.D. Ark. 1996) .......................................................... 16

*Paragon Industries, L.P. v. Denver Glass Machinery, Inc.*,
  2008 WL 3890495 (N.D. Tex. 2008) .................................................... 7, 10

*Serv. Corp. Int'l v. Loewen Group Inc.*,
  1996 WL 756808 (S.D. Tex. 1996) ....................................................... 8, 12

*St. Paul Ins. Co. v. Trejo*,
  39 F.3d 585 (5th Cir. 1994) .................................................................. 6, 13

*Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*,
  819 F.2d 746 (7th Cir. 1987) ................................................................... 12

*Turner v. AmericaHomeKey, Inc.*,
  2011 WL 3606688 n.11 .............................................................................. 5

*Wilton v. Seven Falls Co.*,
  515 U.S. 277 (1995) ................................................................................... 6

## <u>Statutes</u>

28 U.S.C. § 1404(a) ......................................................................................... 14

28 U.S.C. § 2201 ............................................................................................... 5

28 U.S.C. § 400 ................................................................................................. 5

Defendant Producers Credit Protection Group, Inc. ("PCPG") files this Motion to Dismiss or, alternatively, to Transfer and respectfully shows the Court as follows:

## I.  SUMMARY

The Court should dismiss or transfer this case because of another proceeding involving the parties pending in Little Rock, Arkansas. Although the case in this district was first-filed in Harris County state district court (and then removed to this Court on December 9, 2016, *see* ECF 1), courts across the country recognize that the first-filed rule should not be followed where a party engages in bad faith and surreptitious behavior to gain a tactical advantage and files a preemptive lawsuit in an effort to deprive the other litigant of its choice of venue.  That is precisely what happened in this case.  PCPG's attorney sent a settlement demand to MidCon Gathering LLC (hereafter "MidCon") (asserting that MidCon was in breach of contract and owed PCPG) and threatened to sue MidCon if PCPG's demand was not met. Then, after inducing PCPG to believe that discussions and negotiations between the parties were ongoing, MidCon secretly filed this preemptive lawsuit in Texas that seeks only a defensive declaration of non-liability. Under these facts and circumstances, the Court should disregard this case's first-filed status and dismiss (or transfer) this action.

## II. STATEMENT OF THE CASE

MidCon is "an independent oil and gas gathering service marketing the transportation of fuels and refined products." (MidCon's State Court Petition, ECF 1-3 at 2, ¶ 6).  PCPG alleges that, when "MidCon found itself unable to obtain new business because of its inability to obtain letters of credit," MidCon "sought [PCPG's] expertise in obtaining an alternative to letters of credit that would allow MidCon to obtain new business." (*See* Appendix (hereafter "App.") 23, ¶¶ 7-8).  PCPG alleges that MidCon asked PCPG "to create an alternative to Letters of Credit

(hereinafter, "the Credit Facility") for MidCon that would provide MidCon an unlimited ability to grow the volume of oil it purchases without using as much of the MidCon's capital" and that MidCon "agreed to pay [PCPG], in exchange of [PCPG's] creation of The Credit Facility (and for making ancillary arrangements for MidCon to obtain the Credit Facility), a fee of $0.30 per barrel of all oil product transported by MidCon secured by virtue of the Credit Facility." *(Id.* at ¶¶ 8-10).

PCPG alleges that it "did develop the requested Credit Facility for MidCon"; that "MidCon used the Credit Facility to obtain and perform business with Newfield Production" and that "[b]ut for [PCPG's] development of the Credit Facility, MidCon would have been unable to do business with Newfield." *(*App. 23-24, at ¶¶ 9-12).  However, MidCon "did not compensate" PCPG for its "work in developing the Credit Facility." *(Id.* at ¶ 12).  PCPG alleges "MidCon breached its agreement to pay [PCPG] based on business MidCon obtained and performed with Newfield" and/or that "MidCon was unjustly enriched by its use of [PCPG's] Credit Facility without compensating [PCPG]." (App. 24 at ¶¶ 14-15).

 MidCon acknowledges that "[o]n October 19, 2016, MidCon received a demand letter from PCPG's attorney demanding that MidCon pay PCPG $3,240,000." (MidCon State Court Petition at 2, ¶ 6).  In that demand letter, "PCPG claims MidCon owes it for services allegedly rendered by PCPG's principal, Steve Carleson, for the period of November 20, 2014 through November 19, 2015." *(Id.).*  For its part, MidCon claims that "PCPG did not perform any services for MidCon" and that "MidCon does not owe any money to PCPG." *(Id.* at ¶ 7).

PCPG's October 19, 2016 demand letter was sent to Mr. C. Taylor Chalmers, a Vice President at MidCon. (*See* Declaration of Mark A. Peoples, App. 1 at ¶ 2 and *Letter* at App. 5-6). PCPG's demand referenced prior correspondence regarding PCPG's claim, explained the nature

of the claim, and demanded payment. (App. 5-6).  The demand letter explained that PCPG "would consider reducing this demand" if MidCon were to timely respond with certain appropriate evidence to justify a reduction.  (App. 6)  PCPG's demand letter then stated:

> I hope you agree that all parties would prefer to resolve this matter without the need for unfortunate litigation. Nonetheless, if payment is not made on or before close of business on Monday 10/31/2016, *suit will be filed to recover amounts due under the parties' agreement*, together with applicable pre- and post-judgment interest, costs, and attorney's fees.

(App. 6 (emphasis added)).

In response to PCPG's demand letter, Mr. Chalmers telephoned PCPG's counsel. (App. 1-2, at ¶ 3).  In that call, Mr. Chalmers asked whether PCPG's October 31st suit-filing deadline referenced in PCPG's demand letter was absolute (*i.e.*, Chalmers asked "is that a drop dead deadline," or words to that effect). (*Id.*). Mr. Chalmers represented that MidCon management was investigating the particulars of PCPG's claim, but "needed a few more days to determine whether the dispute could be worked out short of litigation." (*Id.*). "Mr. Chalmers indicated that more time was needed to respond, particularly since the person within MidCon who had had the most contact with [PCPG's] Steve Carleson, Deniese Palmer-Huggins, was no longer with MidCon." (*Id.*).

Given the representations made by Mr. Chalmers, PCPG's counsel responded that he did not see the need to file suit immediately if there was a possibility that litigation would become unnecessary.  (*Id.*).  PCPG's counsel "believed, in good faith, that Mr. Chalmers and MidCon were sincere in their expressed willingness to try to resolve the conflict without litigation."  (*Id.*). Thus, PCPG's counsel informed Mr. Chalmers that he "would wait to hear back from him, and [Mr. Chalmers] assured [PCPG's counsel that] "he would get back to me in a few days."  (*Id.*).

After a few days, PCPG's counsel telephoned Mr. Chalmers on Friday, November 4th and inquired regarding the status of possibly resolving the dispute. (App. 2, at ¶ 4). "Mr. Chalmers said they [i.e. MidCon] were still working on it, and would need just a few more days." (*Id.*). Mr. Chalmers promised to get back with PCPGP's counsel early the following week. (*Id.*).

The following week, PCPG's counsel called Mr. Chalmers on Wednesday, November 9th, and left a voicemail asking for him to please call back "today." (*Id.* at ¶ 5). Mr. Chalmers called back that afternoon and said he was surprised that PCPG's counsel had not already heard from "our lawyer" regarding possibly working out the dispute. (*Id.*). MidCon's counsel mentioned the name of a lawyer; the name was not Preston Kamin. (*Id.*).

Later that same day, Wednesday, November 9th, Attorney Preston Kamin telephoned PCPG's counsel. (*Id.* at ¶ 6). Mr. Kamin referenced MidCon and the dispute with Steve Carleson and Producers Credit Protection Group. (*Id.*). Mr. Kamin emphasized that he did not yet represent MidCon, but that he believed he soon would. (*Id.*). He said he would be meeting with MidCon the following day. (*Id.*). Mr. Kamin asked PCPG's counsel to explain the dispute. (*Id.*). PCPG's counsel gave Mr. Kamin a very general description of the matter and also emailed him a copy of the agreement the parties had drafted. (*Id.*). PCPG's counsel emailed Mr. Kamin a copy of the agreement at 4:27 p.m. on November 9th. (*Id.* and cover email and Agreement, App. 8-13).

PCPG's counsel next heard from Mr. Kamin the very next day, November 10th. (App. 2 at ¶ 7). On that date, Mr. Kamin emailed PCPG to state:

> I discussed this with my client. It is MidCon's position that it was not under any obligation to pay your client any money. *Attached is a lawsuit MidCon filed today* seeking a declaration that Mid-Con is not under an obligation to pay any money to Producers Credit Protection Group, Inc.

(*Id*. and App. 15-20 (emphasis added)).  Mr. Kamin attached a copy of a petition he had filed on behalf of MidCon that same day in Harris County, Texas District Court. (App. 15-20).

PCPG's counsel then filed suit in the United States District Court for the Eastern District of Arkansas on November 16, 2016.  A true and correct copy of the complaint in *Stephen Carleson and Producers Credit Protection Group, Inc. v. Midcon Gathering, LLC*, No. 4:16-cv-841-BSM, In The United States District Court Eastern District of Arkansas, Western Division, is attached to the Peoples Declaration. (Complaint, App. 22-31; App. 2 at ¶ 8).

"Had MidCon and Mr. Chalmers not repeatedly assured [PCPG's counsel] that they needed more time in order to explore a non-litigation resolution of the dispute [PCPG's counsel] would have filed suit in Arkansas federal court the week of October 31st, as indicated in [PCPG's] initial demand letter." (App. 2 at ¶ 9).

The present suit by MidCon seeks only a defensive "declaration from the Court that it does not owe PCPG any money and is not a party to any agreement with PCPG." (MidCon State Court Petition, ECF 1-3, at 2, ¶ 6).  In the Arkansas action concerning the exact subject matter, PCPG asserts causes of action for damages against MidCon for breach of contract and/or unjust enrichment.  (MidCon Federal Court Complaint, App. 23-25).

### III. STANDARD OF REVIEW

The Declaratory Judgment Act provides that a federal court "*may*" declare the rights and legal relations of any interested party. 28 U.S.C. § 2201.[1]  As the permissive "may" indicates, "a district court is authorized, in the sound exercise of its discretion to stay or to dismiss an action

---

[1] A declaratory judgment action removed to federal court is treated as one filed under the Federal Declaratory Judgment Act (28 U.S.C. § 400). 28 U.S.C. §§ 2201, 2202; *Bell v. Bank of Am. Home Loan Servicing, LP*, 2012 WL 568755 (S.D. Tex. 2012); *Turner v. AmericaHomeKey, Inc.*, 2011 WL 3606688, *5 n.11 (N.D. Tex. 2011.

seeking a declaratory judgment," and "the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Wilton v. Seven Falls Co*., 515 U.S. 277, 288 (1995). It is, then, "a matter for the district court's sound discretion whether to decide a declaratory judgment action," and in exercising that discretion, the Court "may . . . take into account a wide variety of factors," including the pendency of a parallel action involving substantially similar issues and parties. *Mission Ins. Co. v. Puritan Fashions Corp*., 706 F.2d 599, 601-02 (5th Cir. 1983).

"As presiding judge over the first-filed action, this Court must decide whether the case at bar proceeds or should be dismissed in deference to the second-filed action." *Dynamic Sports Nutrition, LLC v. Hi-Tech Pharm., Inc.,* CV H-15-2645, 2016 WL 1028691, at *2 (S.D. Tex. Mar. 15, 2016). To guide the exercise of discretion, courts in the Fifth Circuit have been directed to consider seven factors set forth in *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585 (5th Cir. 1994) (the "*Trejo* factors"):

(1)   whether there is another pending action in which all of the matters in controversy may be fully litigated;

(2)   whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant;

(3)   whether the plaintiff engaged in forum shopping in bringing the suit;

(4)   whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist;

(5)   whether the court is a convenient forum for the parties and witnesses;

(6)   whether retaining the lawsuit would serve the purposes of judicial economy;

(7)   whether the court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.

*See Dynamic Sports Nutrition*, 2016 WL 1028691, at *3–4 (applying *Trejo* factors in context of competing federal court actions); *see also Am. Bankers Life Assurance Co. of Fla. v. Overton*, 128 F. App'x 399, 402 (5th Cir. 2005).

## IV. COMPELLING CIRCUMSTANCES EXIST TO DISREGARD THE FIRST-FILED RULE AND DISMISS THIS ACTION

While "[c]ourts in the Fifth Circuit generally follow a 'first-filed rule' in deciding which Court should maintain jurisdiction over claims that arise out of the same subject matter but are pressed in different suits," they will not do so where "compelling circumstances" are present. *909 Corp. v. Vill. of Bolingbrook Police Pension Fund*, 741 F. Supp. 1290, 1292 (S.D. Tex. 1990) (Hittner, J.) (quotations omitted). The filing of a declaratory judgment action in anticipation of a plaintiff's expressed intention to file an action for damages is just such a "compelling circumstance." *See id.* In such circumstances, application of the "first-to-file" rule would "deprive a potential plaintiff of his choice of forum" and "create disincentive to responsible litigation by rewarding the winner of a race to the courthouse." *Paragon Industries, L.P. v. Denver Glass Machinery, Inc.* 2008 WL 3890495 at *4 (N.D. Tex. 2008), quoting *Frank's Tong Serv., Inc. v. Grey Wolf Drilling Co, L.P.*, 2007 WL 5186798 at *4 (S.D. Tex. 2007).[2]

"When a declaratory judgment action is filed 'for the purpose of anticipating a trial of the same issues in a court of coordinate jurisdiction,' the first-filed declaratory claims should be dismissed.'" *Dynamic Sports Nutrition, LLC v. Hi-Tech Pharm.*, Inc., CV H-15-2645, 2016 WL

---

[2] *See also, e.g., Liberty Mut. Fire Ins. Co. v. Bohms,* 2011 WL 3268608, *6 (W.D. Mich. July 29, 2011) (dismissing defensive claims for declaratory relief and observing: "[T]he concern is that the declaratory judgment action not be used to allow the "natural defendant" to preempt the "natural plaintiff's" choice of forum and that the action not be used to force the natural plaintiff to race to the courthouse rather than come to the negotiation table. ... Allowing the declaratory judgment here would run counter to both of those goals."), *aff'd*, 490 Fed.Appx. 721, 726 (6th Cir. 2012).

1028691, at *4 (S.D. Tex. Mar. 15, 2016) (Atlas, J.), citing *909 Corp.*, 741 F. Supp. at 1292 (citing, *inter alia*, *Mission Ins. Co. v. Puritan Fashions Corp*., 706 F.2d at 602 and *Amerada Petroleum Corp. v. Marshall*, 381 F.2d 661, 663 (5th Cir. 1967)); *see also, Serv. Corp. Int'l v. Loewen Group Inc*., 1996 WL 756808, at *2 (S.D. Tex. 1996) (Rainey, J.) ("a suit for declaratory judgment aimed solely at wresting the choice of forum from the 'natural' plaintiff will normally be dismissed") (internal quotation marks and citations omitted)).

The first-filed rule does not apply in preemptive-filing cases such as this one, in part because of the risk of chilling settlement negotiations.  *See, 909 Corp.,* 741 F. Supp. at 1292. Courts thus dismiss anticipatory declaratory judgment actions when, as here, application of the first-to-file rule would "penalize" the other other party "for its attempt to make a good faith effort to resolve this dispute out of court." *Mill Creek Press, Inc. v. The Thomas Kinkade Co*., CIVA.3:04-CV-1213-G, 2004 WL 2607987, at *9 (N.D. Tex. Nov. 16, 2004), citing *Merle Norman Cosmetics v. Martin,* 705 F. Supp. 296, 299 (E.D. La. 1988) ("Potential plaintiffs should be encouraged to attempt settlement discussions (in good faith and with dispatch) prior to filing lawsuits without fear that the defendant will be permitted to take advantage of the opportunity to institute litigation in a district of its own choosing before plaintiff files an already drafted complaint.") (quoting *Columbia Pictures Industries, Inc. v. Schneider,* 435 F. Supp. 742, 747-48 (S.D.N.Y.1977), *aff'd,* 573 F.2d 1288 (2d Cir. 1978) (table)).

"Compelling circumstances" warranting the dismissal of an anticipatory declaratory action are clearly present "where a party engaged in bad faith conduct, by inducing an opposing party to delay filing of a lawsuit, so that [it] could file a preemptive lawsuit." *Chapa v. Mitchell*, No. A-05-CV-769-JN, 2005 WL 2978396 at *2 (W.D. Tex. Nov. 4, 2005).  That is precisely what has happened here: MidCon engaged in bad faith conduct by inducing PCPG to delay filing

of its lawsuit, so that MicCon could secretly file this preemptive action seeking only a defensive declaration of non-liability.  Courts in this circuit have repeatedly found such facts to constitute the very sort of "compelling circumstances" that justify dismissing the first-filed anticipatory declaratory judgment action.

For example, in *Chapa,* the Court declined to apply the "first-to-file" rule because the plaintiff led the defendants to believe that he was committed to resolving the dispute out of court. The plaintiff in *Chapa* preemptively filed his declaratory judgment action after inducing defendants into believing that he was committed to resolving the dispute out of court. Specifically, when threatened with a lawsuit by defendants, plaintiff expressed his desire to settle. Plaintiff then asked defendants, on several occasions, to deter the filling of their lawsuit so that he could consider the terms of the settlement. Relying on plaintiff's expressed willingness to settle, defendants obliged plaintiff and deferred filing of their lawsuit. Lacking similar consideration, plaintiff took advantage of defendants' deferral and filed a preemptive declaratory judgment action. The court found the plaintiff's preemptive filing was done in anticipation of defendants' filing because "Plaintiff induced Defendants to stretch the parties' settlement negotiations, and, while the parties were negotiating, Plaintiff filed this action." *Id*. at *3.  The court found that compelling circumstances were present and warranted the dismissal of the first-filed action.

In *Mill Creek Press*, the court also concluded that the plaintiffs filed a declaratory judgment suit in anticipation of litigation by the defendant and thus dismissed the first-filed action. 2004 WL 2607987, *7.  Before the action was filed, the plaintiffs participated in settlement negotiations and the defendant had specified a deadline for resolution of the dispute to avoid litigation, all demonstrating that the plaintiff was aware of the possibility of suit.  The

plaintiffs filed their declaratory judgment action "during a period of 'settlement negotiations' in which the plaintiffs and [defendant] attempted to informally resolve the issues." *Id*. at *8.  The court found that the plaintiffs "improperly filed their declaratory judgment in an attempt to gain the advantage of their preferred forum when [the defendant—i.e., the natural plaintiff] should have been given its choice of forum." *Id*. at *9. "Furthermore, application of the first-to-file rule in this instance would penalize [defendant] for its attempt to make a good faith effort to resolve this dispute out of court." *Id*.

In *Paragon Industries,* the court found that the parties' pre-litigation communications alerted Paragon to the possibility of suit. 2008 WL 3890495 at *4.  Denver Glass demanded that Paragon cease use of Denver Glass's patented glass making machines.  Paragon requested, and Denver Glass granted, an extension of time for Paragon to respond to Denver Glass's demand. Before the extension expired, Paragon filed its declaratory judgment action. The Court held that "[t]hese facts indicated that Paragon filed suit in anticipation of litigation by Denver Glass. Because Paragon filed its declaratory judgment action in anticipation of Denver Glass's infringement suit, Paragon's preferred forum is entitled to no weight. The preferred forum of Denver Glass-the true plaintiff in the litigation-will be accorded significant weight." *Id*. at *5.

In *909 Corp.,* the defendant Fund sent a letter that demanded "Underwood refund $2.5 million representing an alleged unauthorized investment." 741 F. Supp. at 1291. The Fund's letter advised Underwood of the defendant's intent "to pursue available remedies" if necessary. *Id.* Underwood responded by filing a declaratory judgment action seeking a declaration that he was not liable. *Id*. In short, "although it knew of the Fund's potential claim and attempt to seek an out-of-court settlement, Underwood nevertheless filed suit." *Id.* at 1293.  The court concluded that "[a]pplication of the first-filed rule could penalize the Fund for its attempt to make a good

faith effort to settle out of court." *Id.*  Recognizing that courts "should not allow this type of forum shopping in the form of anticipatory, declaratory judgment suits," the court granted the defendant's motion to dismiss the first-filed action. *Id.*

Here, the pertinent *Trejo* factors weigh heavily in favor of dismissal.  Regarding whether filed this as an anticipatory suit, *Trejo* factor # 2, "the answer is plainly 'yes.'" *See, Dynamic Sports Nutrition*, 2016 WL 1028691, at *4.   MidCon filed this suit not only **_knowing_** that PCPG intended to sue, but also after first inducing PCPG to delay filing such a suit.  Indeed, the very relief sought by MidCon in this case explains that it is an anticipatory suit. (*See* MidCon Petition).   Apart from inducing delay by asking for more time to consider PCPG's claim, MidCon "neither engaged in discussion nor gave any non-litigation response to [PCPG] before filing its declaratory judgment claims." *See, Dynamic Sports Nutrition*, 2016 WL 1028691, at *4. This factor weighs heavily in favor of dismissal.  *See id.*

Factor # 3 also weighs in favor of dismissal.  MidCon "[p]lainly engaged in forum shopping" as it "sought to litigate in its home district." *See id.*   No circumstances were present that mandated MidCon's immediate filing of a declaratory judgment suit.  *See id.*

Factor # 4 addresses possible inequities if MidCon were allowed to proceed in this forum. As noted above, "[w]hen a declaratory judgment action is filed "for the purpose of anticipating a trial of the same issues in a court of coordinate jurisdiction," the first-filed declaratory claims should be dismissed." *Id.*, citing *909 Corp.*, 741 F. Supp. at 1292.  "If the courts were to permit [MidCon] to proceed with its declaratory judgment action through its pell-mell "race to the courthouse," parties giving notice of perceived wrongs and trying to negotiate disputes would be discouraged from holding off on litigation." *Id.,* citing *909 Corp.*, 741 F. Supp. at 1293 ("Application of the first-filed rule could penalize [the defendant] for its attempt to make a good

faith effort to settle out of court."); *see also New Orleans Pub. Serv., Inc. v. Majoue*, 802 F.2d 166, 168 (5th Cir. 1986) ("The wholesome purposes of declaratory acts would be aborted by its use as an instrument of procedural fencing either to secure delay or to choose a forum." (internal quotation marks and citations omitted)); *Serv. Corp. Int'l v. Loewen Group Inc.*, 1996 WL 756808, at *2 (S.D. Tex. 1996) (Rainey, J.) ("a suit for declaratory judgment aimed solely at wresting the choice of forum from the 'natural' plaintiff will normally be dismissed" (internal quotation marks and citations omitted). Factor # 4 weighs in favor of dismissal of this declaratory judgment action.

Next, *Trejo* factor # 6, *i.e.*, whether retaining this case would serve the purposes of judicial economy, also weighs in favor of dismissal. Because PCPG's claims for damages are now pending, MidCon's defensive declaratory action is effectively moot.[3] Furthermore, "both the first-filed and the second-filed suits are in their infancy; no substantive legal issues have been decided." *See, Dynamic Sports Nutrition*, 2016 WL 1028691, at *5.

Factor # 5, the convenience of each forum for the parties and witnesses, favors dismissal because virtually all witnesses with knowledge of the underlying events at issue <u>live in Arkansas</u>, *not* Texas. *See* Declaration of Stephen Carleson, App. 32-34. The primary witnesses to this matter are David Hightower, MidCon's former President who is an Arkansas resident, his associate Gary Jackson, also an Arkansas resident, and Gabi Abdo, an Arkansas resident, and Stephen Carleson, an Arkansas resident. App. 33, at ¶ 7. The negotiations of the agreement and

---

[3] A declaratory judgment action, designed to avoid the accrual of damages, serves no purpose if a party has already been damaged and institutes an action for redress. *See, e.g., Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 750 (7th Cir. 1987); *Atochem North America, Inc. v. Fisons PLC*, 1990 WL 31897, at *2 (E.D. Pa. March 20, 1990); *Associated Mills, Inc. v. Regina Co., Inc.*, 675 F. Supp. 446, 448 (N.D. Il. 1987); *Lewis v. National Football League*, 813 F. Supp. 1, 4 (D. D.C. 1992) ("coercive litigation renders moot the declaratory judgment action").

the work performed by PCPG and its principal, Stephen Carleson, all occurred in Arkansas. App. 32-34, at ¶ 2, 4, 5, 6, and 7.   And the subject matter of the contract--oil purchases--was understood by Mr. Carleson to involve Oklahoma crude.  App. 33, at ¶ 8.

Of course, even assuming arguendo that the burden of travel would weigh equally on both parties, that is not a ground for allowing an anticipatory declaratory judgment action to go forward in the natural/would-be defendant's chosen forum.  *See Metro Optics, Inc. v. Contex, Inc.*, No. 95-2157, 1996 WL 302697, at *2 (N.D. Tex. Mar. 14, 1996) ("the Court determines that the burden of travel would weigh equally heavy on either side. Metro should not be allowed to alleviate its litigation expense by filing an anticipatory declaratory judgment action.").  But the burdens are not equal; Mr. Carleson is in poor physical health, and it was be extraordinarily inconvenient for him to litigate this matter outside of Arkansas, which is where all of the work underlying the claim occurred.  App. 34, at ¶ 11, 7.

Finally, "Factors # 1 and # 7 address federalism concerns that are not pertinent in this case as there is no pending related state action."  *See, Dynamic Sports Nutrition*, 2016 WL 1028691, at *5.

MidCon's "rush to the courthouse provides 'compelling circumstances' warranting dismissal of this first-filed action." *See id., citing Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 407 (5th Cir. 1971). As set forth above, the *Trejo* factors provide additional support for this conclusion, especially the factors regarding anticipatory filings, forum shopping, and possible inequities if the case were to proceed in this forum.  *See id.,* citing *Trejo*, 39 F.3d at 590-91.

Although the above-discussion of the *Trejo* factors cites frequently to the court's analysis in *Dynamic Sports Nutrition*, the decision to dismiss is even more obvious in the present case. When MidCon filed this defensive declaratory judgment suit, MidCon not only *knew* of PCPG's

claim and demand for payment and *knew* of PCPG's intent to affirmatively bring suit to collect damages, MidCon also *knew* that PCPG was *waiting* to hear back from MidCon regarding the possibility of settlement before PCPG would file its suit.  MidCon "engaged in bad faith conduct, by inducing an opposing party to delay filing of a lawsuit, so that [it] could file a preemptive lawsuit." *Chapa*, 2005 WL 2978396 at *2.  The Court should exercise its discretion to dismiss the pending case despite its being filed shortly before PGPG's suit was filed in Arkansas.  The motion to dismiss should be granted.

## V.  ALTERNATIVELY, THIS CASE SHOULD BE TRANSFERRED TO THE FEDERAL DISTRICT COURT FOR THE DISTRICT OF ARKANSAS.

Alternatively, the Court should transfer this action pursuant to 28 U.S.C. § 1404(a). "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a).

Courts in the Fifth Circuit analyze several public and private interest factors addressed in *In re Volkswagen of Am., Inc.,* 545 F.3d 305, 315 (5th Cir. 2008), when determining whether a transfer of venue is appropriate.  The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *In re Volkswagen of Am.,* 545 F.3d at 315. The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law.  *Id.*

As set forth in the Declaration of Stephen Carleson, App. 32-34, Arkansas is clearly more convenient.

## A.    **Private Interest Factors**

In support of Private Factor 1 (the relative ease of access to sources of proof), Private Factor 2 (the availability of compulsory process to secure the attendance of witnesses), and Private Factor 3 (the cost of attendance for willing witnesses), four out of the six relevant fact witnesses live and work in Arkansas (App. 32, ¶ 7), both Defendants are registered to conduct business in Arkansas (App. 33, ¶ 4, 6), MidCon executives lived in Arkansas and routinely conducted work from a Benton, Arkansas office (App. 32-33, ¶ 2, 4), and the meetings and work that are the subject of the lawsuit occurred in Arkansas (App. 32-33, ¶ 2-7):

- Mr. Carleson, the principal of PCPG, is an individual residing in Little Rock, Arkansas. (App. 32, ¶ 1)

- David Hightower, the former President of MidCon with whom Mr. Carleson had meetings and negotiations, lives in Arkansas.  (App. 32, ¶ 2)

- Gary Jackson, Mr. Hightower's business associate with whom Mr. Carleson had meetings and negotiations, lives in Arkansas. (App. 32, ¶ 2)

- The work performed by PCPG and Mr. Carleson to develop credit facilities for MidCon occurred in Arkansas. (App. 32-33, ¶ 2-7)

- MidCon Gathering, LLC is presently registered to conduct business in Arkansas. (App. 33, ¶ 4)

- MidCon regularly conducted business in Arkansas throughout the 2014-2015 time period from the Spears Production offices in Benton, Arkansas. (*Id.*)

- Producers Credit Protection Group, Inc. (PCPG), an Arkansas corporate, is registered for business in Arkansas, but not in Texas. (App. 33, ¶ 6)

- Another key witness resides in Arkansas: Gabi Abdo (an Arkansas resident). (App. 33, ¶ 7)

15

In support of Private Factor 4, Mr. Carleson is in poor health, and it would be a physical hardship for him to have to travel to Texas to participate in legal proceedings in Texas. (App. 34, ¶ 11).

**B.      Public Interest Factors**

In regard to Public Factor 2 (the local interest in having localized interests decided at home), Public Factor 3 (the familiarity of the forum with the law that will govern the case), and Public Factor 4 (the avoidance of unnecessary problems of conflict of laws or in the application of foreign law), all three factors support the case proceeding in Arkansas.

- All three people who negotiated the deal at issue in this case are in Arkansas. (App. 32-33, ¶ 2-7)

- All negotiations and work regarding the MidCon deal occurred in Arkansas. (*Id.*)

The Public Interest Factors support an Arkansas forum.  Given the facts regarding this disputed agreement and its strong nexus to Arkansas, the determination of whether or not an agreement was reached, whether it was breached, and the remedies available should be determined under Arkansas law.  *Nursing Home Consultants, Inc. v. Quantum Health Services, Inc.*, 926 F. Supp. 835, 841 (E.D. Ark. 1996) ("In contract actions, the Arkansas Supreme Court has stated, in its most recent pronouncement on the subject, that it will apply the "most significant relationship" test to breach of contract claims.") (citing *Ducharme v. Ducharme,* 316 Ark. 482, 485, 872 S.W.2d 392, 394 (1994)).[4]  Arkansas has the most significant relationships, and it should be left to an Arkansas federal court and an Arkansas jury to determine whether an

---

[4] The Eighth Circuit went on to state in *Quantum* that "[o]f course, resort to this test need only be made if the parties have not specified the law that will govern any disputes arising under their contract. As in most (if not all) other jurisdictions, Arkansas courts will enforce a contractual choice-of-law clause, provided that the law selected is reasonably related to the contract at issue and does not violate a fundamental public policy of the forum state."  *Id.* at 841.  Here the parties negotiated and drafted an agreement that stated that Arkansas law would govern any disputes. App. 13.

Arkansas resident (Carleson) and his Arkansas corporation (PCPG) did, or did not, enter into an enforceable deal with a company (MidCon) that is registered to do business in Arkansas, and that was, during the relevant time frame, actively conducting business in Arkansas through its existing President (Hightower), an Arkansas resident.

Public Interest Factor 1, the administrative difficulties flowing from court congestion, does not appear to be an issue in the federal courts in Houston or Little Rock.

As the Private and Public factors favor the case proceeding in Arkansas federal court, PCPG respectfully requests that, if the case is not dismissed, it be transferred to the

## VI. CONCLUSION AND PRAYER

WHEREFORE, Defendant Producers Credit Protection Group, Inc. requests that this case be dismissed or, alternatively, and that Defendant obtain all additional relief to which it is entitled.

Dated: December 16, 2016

Respectfully submitted,

By: */S/ R. Martin Weber, Jr.*
R. Martin Weber, Jr.
State Bar No. 00791895
CROWLEY NORMAN LLP
3 Riverway, Ste. 1775
Houston, Texas 77056
(713) 651-1771
(713) 651-1775 (Facsimile)
mweber@crowleynorman.com

**ATTORNEY FOR DEFENDANT**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the attached document was filed with the Court on December 16, 2016 using the Electronic Filing System and a transmittal of a Notice of Electronic Filing was sent the Plaintiff's counsel of record:

Preston T. Kamin
GRAY REED & McGRAW, P.C.
1300 Post Oak Blvd., Suite 2000
Houston, Texas 77056
pkamin@grayreed.com


*/s/ R. Martin Weber, Jr.*
R. Martin Weber, Jr.